OPINION
This is an accelerated calendar case submitted to this court on the briefs of the parties.
Appellant, Eric Dadlow, appeals from a decision of the Ashtabula County Court of Common Pleas granting a permanent injunction in favor of appellee, Philip A. Seyboldt, Chief Building Official, Ashtabula County Department of Building Regulations, ordering appellant to vacate and raze the structure he owns at 7921 State Route 7, Williamsfield Township, Ohio. Additionally, appellant was ordered to remove the debris from the premises within ninety days of the trial court's judgment, July 2, 1998. For the following reasons, we affirm the decision of the trial court.
The building at the center of this controversy once housed the Williamsfield Town Hall. Over the years, it has fallen into a state of disrepair such that on August 14, 1997, appellee issued an adjudication order to appellant for violations of the Ohio Basic Building Code, Ohio Adm. Code 4101:2-1-01 et seq. Appellant was given thirty days to comply with the order or to request a hearing appealing the order. Specifically, appellee asserted that scrap lumber and other debris covered the site, and needed to be removed to allow safe egress from the building. Also, doors, stairs, and handrails needed to be repaired. The building further needed the proper number of exits and to be ventilated in accordance with the Ohio Basic Mechanical Code.
Then, on August 28, 1997, Edward E. Switzer, Fire Safety Inspector for the Andover Volunteer Fire Department, sent appellant a notice of violation outlining four specific violations of the Ohio Fire Code on the property in question. These violations included an unlawful accumulation of combustible waste on the premises, an inadequate means of egress from the building, and an unsafe chimney.
Appellant neither corrected the violations nor appealed the adjudication order and, thus, on October 7, 1997, appellee filed a civil complaint in the Ashtabula County Court of Common Pleas. Appellee alleged that appellant was maintaining a public nuisance at the premises which was dangerous to the surrounding area. Appellee demanded the issuance of a preliminary and permanent injunction ordering appellant to make the necessary improvements as outlined in the August 14, 1997 adjudication order. The trial court conducted a hearing on the matter on October 28, 1997. Pursuant to the hearing, on December 12, 1997, the trial court granted a preliminary injunction directing appellant to vacate the structure and to comply with all building code regulations within thirty days. Specifically, the trial court found that the two-story building was being used as a gymnastic center, yet there was no water service to the building. Additionally, the building was surrounded by debris and other materials. The court concluded that the building "constitutes an unsafe, unsanitary condition, a fire hazard, and it is dangerous both to the human life and to the surrounding property and the public welfare * * *." A final hearing on the matter was set for March 18, 1998.
At the March 18, 1998 hearing, appellee presented evidence that appellant had failed to comply with the December 12, 1997 order of the trial court. Accordingly, on July 2, 1998, the trial court issued a judgment entry granting a permanent injunction ordering appellant to raze the structure and remove the debris from the premises within ninety days. From that decision, appellant timely filed a notice of appeal.
Appellant has set forth three assignments of error. In the first assignment of error, appellant contends that the trial court erred in granting the preliminary and permanent injunctions, and in ordering the razing of the building. Within his first assignment of error, appellant has raised numerous issues. First, appellant asserts that the fire inspector's notice was only a notice and not a citation and, therefore, the trial court had no jurisdiction to have the building razed.
Appellant, however, seems to have overlooked the fact that the complaint filed against him was initiated by the Chief Building Official of Ashtabula County, Philip Seyboldt, rather than the fire inspector, Edward Switzer. Seyboldt issued an adjudication order to appellant in accordance with Ohio Adm. Code4101:2-1-35, which provides, in relevant part:
 "(A) Before any department or agency of the state or any political subdivision attempts to enforce Chapters 3781. and 3791. of the Revised Code or any rules adopted pursuant thereto, by any remedy, civil or criminal, it shall issue an adjudication order within the meaning of sections 119.06 to 119.13 of the Revised Code, or a stop work order as provided in rule 4101:2-1-36 of the Administrative Code.
 "(B) Every adjudication order shall cite the law or rules directly involved and shall specify what appliances, site preparations, additions, or alterations to structures, plans, materials, assemblages or procedures are necessary for the same to comply with Chapters 3781. and 3791. of the Revised Code.
 "(C) The order shall include notice to the party of the procedure for appeal and right to a hearing if requested within thirty days of the mailing of the notice. The notice shall also inform the party that at the hearing he may be represented by counsel, present his arguments or contentions orally or in writing, and present evidence and examine witnesses appearing for or against him."
When appellant failed to appeal the adjudication order or make the necessary repairs to the structure, Seyboldt properly filed injunction proceedings in the trial court. See Ohio Adm. Code4101:2-1-40 and R.C. 3781.15. Then, once it was determined that the structure was a serious hazard, Ohio Adm. Code 4101:2-1-39
requires the building to be vacated and where the building, even after being vacated, remains a serious hazard, it mandates that the building be razed.
Accordingly, whether the fire inspector issued a notice or citation is simply not relevant to the issue of whether the trial court had jurisdiction to order the building razed. Thus, this argument is not well taken.
Next, appellant claims that there was insufficient evidence that the building constituted a "public nuisance" under the Ohio Revised Code. Without evidence that the building was a public nuisance, appellant argues that appellee was not entitled to injunctive relief under R.C. 3781.15.
Appellant relies on the definition of public nuisance found in R.C. 3781.11(C), which provides, in pertinent part:
 "Any building, structure, or part thereof, constructed, erected, altered, manufactured, or repaired not in accordance with the statutes of this state or with the rules of the board, and any building, structure, or part thereof in which there is installed, altered, or repaired any fixture, device, and material, or plumbing, heating, or ventilating system, or electric wiring not in accordance with such statutes or rules is a public nuisance."
Appellant asserts that there was insufficient evidence presented that the building met this definition of public nuisance and, further, the trial court never specifically found that the building constituted a public nuisance.
Ohio Adm. Code 4101:2-1-39, however, allows for the razing of a building where it is found to be a serious hazard. The term "public nuisance" is not used in the relevant portions of the Ohio Basic Building Code. Thus, it appears as though the razing of a building is permissible as long as it is either a public nuisance or a serious hazard.
In the case sub judice, the trial court specifically found that the building was unsafe, unsanitary, a fire hazard, and dangerous to both human life and to the surrounding property and the public welfare. The trial court's finding was based upon evidence that debris had been dumped in front of, and up against, the building which presented a potential rodent problem, and represented a fire hazard. The building had no exits as the doors had been nailed shut. Some portions of the building were collapsing and many windows were broken, and the main chimney was fractured and ready to collapse onto the driveway. Finally, there was no running water in the building. The chief building official concluded that the structure constituted a serious hazard to the community. In reaching its decision, the trial court had before it numerous photographs of the premises which supported Seyboldt's description of the property and building.
Based upon the foregoing, there was more than sufficient evidence to support the trial court's finding that the building constituted a serious hazard and, therefore, was a proper candidate to be razed in accordance with Ohio Adm. Code4101:2-1-39.
The third subissue raised by appellant is whether a building need conform to the new building code requirements before being occupied as an assembly area. Appellant submits that it does not. Pursuant to Ohio Adm. Code 4101:2-1-27, a certificate of occupancy must be issued by the building official before a building is used when it has changed from one occupancy to another. It is appellant's contention that the building has been used as a place to train children in gymnastics since 1989 and, therefore, there is no requirement that the building conform to the new building code regulations.
However, whether or not the use or occupancy of the building has recently changed is irrelevant when there is a finding that the building, even when vacant, is a serious hazard to the public. Ohio Adm. Code 4101:2-1-39. Under such circumstances, the certificate of occupancy issue is moot.
In his fourth subissue, appellant asserts that the adjudication order issued by appellee was defective and can not be used as a basis to commence an injunction proceeding pursuant to R.C. 3781.15. As stated by Ohio Adm. Code 4101:2-1-35(B) 
(C), an adjudication order "shall cite the law or rules directly involved and shall specify what * * * alterations * * * are necessary for the same to comply with Chapters 3781. and 3791. of the Revised Code." Additionally, the order "shall include notice to the party of the procedure for appeal and right to a hearing if requested within thirty days of the mailing of the notice."
Appellant contends that the adjudication order he received referred to the wrong Ohio Revised Code section regarding his right to appeal, and that it was too vague to adequately inform him of what was expected of him to avoid legal action.
While the adjudication order did, in fact, reference the wrong code section with respect to appellant's right to appeal, it is clear that it adequately informed him of his right to appeal and the appeal process in general. A review of the adjudication order reveals that it informed appellant that he had the right to appeal within thirty days and that a hearing would be held where he would have the right to be represented by counsel. He would be able to present his arguments orally or in writing, and he would be allowed to present evidence and examine witnesses appearing for or against him. Additionally, appellant was instructed to send a written request for an appeal hearing, including his reason for appeal, to the proper address for the Ohio Department of Commerce in Reynoldsburg, Ohio. This was sufficient to inform appellant of his right to appeal.
Additionally, the adjudication order sent to appellant was not overly vague and adequately informed him of what he needed to do to avoid further legal action. It provided, in pertinent part:
"SPECIFIC CODE VIOLATION:
 "1. Section 4101:2-1-39; Where a building is found to be a serious hazard, such hazard shall be eliminated or the building shall be vacated, and where such building, when vacated, remains a serious hazard, it shall be razed.
 "2. Section 4101:2-1-27; A building or structure hereafter erected, enlarged, extended, or altered or changed from one occupancy to another, in whole or in part, shall not be occupied or used until a certificate of occupancy shall have been issued by the Building Official.
 "3. Section 120.1 of the Ashtabula County Building Code: All buildings or structures that are or hereafter shall become unsafe, unsanitary, or deficient in adequate means of egress facilities, or which constitute a fire hazard, or are otherwise dangerous to human life or the public welfare, or which involve illegal or improper use, occupancy, or maintenance, shall be deemed unsafe buildings or structures.
"REQUIREMENTS:
 "1. All scrap lumber and other forms of debris must be completely removed from the site to allow safe egress from the structure for patrons. Doors, stairs, handrails, and other building components which impact the safe egress from the structure must be in proper working condition.
 "2. The structure was most recently (for the last 15 to 20 years) used as both a Mercantile use and an auto repair garage (Moderate Hazard Storage). The building must be inspected for the change of use back to an assembly building for use as a gym. It must have the proper number of exits, be ventilated per the Ohio Basic Mechanical Code, and conform to other requirements for assembly uses that will be determined at the time of the Change of Use inspection. Said inspection may be arranged through the Ashtabula County Building Department at the letterhead number." (Emphasis sic.)
This adjudication order was quite specific in setting forth those provisions of the Ohio Basic Building Code and the Ashtabula County Building Code that had been violated. More importantly, it was rather explicit in informing appellant of what changes had to be made to bring the property and the building into compliance with the aforementioned codes.
Based upon the foregoing analysis, the trial court did not err in granting the preliminary and permanent injunctions, or in ordering the razing of the building. Thus, appellant's first assignment of error is without merit.
In the second assignment of error, appellant submits that the trial court erred in ordering the building razed without first requiring that appellant receive compensation for his loss. Appellant argues that the trial court's order amounted to a "total taking" of his property and, accordingly, he was entitled to compensation pursuant to Section 19, Article I, Ohio Constitution. We disagree.
The ordering of the demolition of property in order to preserve the public health is not a taking of private property for public use but, rather, the abatement of a public nuisance.Kroplin v. Truax (1929), 119 Ohio St. 610, 621. Thus, a property owner is not entitled to compensation. Id; see, also Fifth Urban,Inc. v. Board (1974), 40 Ohio App.2d 389, 398, McMaster v. Akron
(Oct. 25, 1995), Summit App. No. 17133, unreported, 1995 WL 623049. In the instant cause, the trial court found that the building was unsafe, unsanitary, a fire hazard, and dangerous to human life, surrounding property, and public welfare. Clearly, the trial court's order was an attempt to preserve the public health. Thus, appellant was not entitled to compensation. None of the cases cited by appellant are applicable to the case at bar since none of the cases involved a situation where the property was found to be a serious hazard to the public, and surrounding properties. Hence, appellant's second assignment of error is without merit.
In the third assignment of error, appellant contends that the trial court violated his right to be represented by an attorney. Appellant alleges that the proceedings were quasi-criminal in nature and that they involved a forfeiture of his property and, therefore, he was entitled to have an attorney. Once again, we disagree.
Violation of the Ohio Basic Building Code is not a criminal dct. It is strictly a civil action. Appellant suggests that what occurred amounted to a forfeiture of his property. This is not true. A "forfeiture" is defined as the taking of property as a penalty due to an illegal act or the breach of a legal obligation. Black's Law Dictionary (5 Ed.Rev. 1979) 584-585. In the present case, appellant was not ordered to raze the building as a punishment but, rather, to eliminate a serious hazard to the community. Thus, appellant was not entitled to appointed counsel. Appellant's third assignment of error is without merit.
Based upon the foregoing analysis, the judgment of the trial court is hereby affirmed.
__________________________________
JUDGE WILLIAM M. O'NEILL
FORD, P.J., CHRISTLEY, J., concur.